So, let me explain why those other circuits got it wrong about specialty health care. Where they went wrong was they didn't acknowledge the extent to which specialty health care changed the law. All of the opinions recognize that specialty health care was a change in the law, but it's minimized. And the courts basically say, well, the NLRB did more than just clarify, but it's familiar enough that we're going to let them get by with it. I submit to this court that the change in specialty health care was a fundamental change in the way the board decides who can vote to have a union, and that's a big deal. You know, you don't appear to challenge the result of the board's application of specialty health care, but rather the standard itself. But would the standard make a difference in this case? Member Johnson seemed to think that your position would fail, even under a traditional community of interest analysis. Well, all right, and that's a very interesting point. The board could have decided the case the same way, under the traditional community of interest analysis, but they chose not to. And I suggest to you the reason that they chose not to was they are trying to extend the standard and really impinge on future boards' discretion in making these cases. In other words, they're trying to set this low bar for unions and this high bar for employer rebuttal on future boards. The short answer to your question, Your Honor, and I got a little ahead of myself there. The short answer to your question is where they apply the wrong standard, a court of appeals is required to remand so they can apply the correct standard. And so you're right, our argument is essentially that the specialty health care standard that they applied was wrong. Why do you want one large local union rather than two little ones? Is that what you want? No, Your Honor. Well, what we want in this particular case is, on the facts, we wanted a larger unit. Yes, exactly. I'm asking you why. Why do you care whether it's one large unit or two small? Because we think there's a better chance of winning the election. Hey, don't interrupt me, would you please? So tell me why you want one large union, the dock workers and the drivers, rather than two little unions. Because we think we'd have a better chance of winning the election. Same reason that they want the smaller unit. Well, at least you're being candid. It's a pretty bad reason, but... Well, that's what these things are all about. Sorry to be candid, Your Honor. Well, why on earth should the election board care about accommodating your desire to win the election? I don't get that. Well, that... That's ridiculous. What we're saying is they need to apply the right standard. You go to the labor board and you say, look, you can have two little unions, you can have a big union, but we want the big union because we think we can win the election. Well, and that is why... And why would they give way to that? Well... I wouldn't. The... You asked for the reason. It's not a reason. It's a desire, you know? It's a greed or something. It's not a reason. The board's obligated to apply the correct standard, Your Honor. And that... I don't know what you're talking about. I asked you, from the standpoint of social policy, why is it better to have the two... to have one union with both of these rather disparate groups of workers or the two little unions? Because the standard in specialty health care. Look, I want to know why is that a good thing for society to have the one big union rather than the two little ones? Because an employer who has to bargain in a bunch of little bitty unions, it's extremely inefficient. It is far preferable from an employer standpoint to bargain with larger unions on a location or even a regional basis. Yes, it's preferable for the company. But what good does it do for society? Why should the company's interest take precedence over that of the union? Because the smaller units have increased costs on the employer which are passed on to society. Is it compatible with the policy of the Labor Act, though? It is not compatible with the policy of the Labor Act, Your Honor. In fact, what specialty health care amounts to is an institutional violation of Section 9C5 because what they have done, they have allowed the union's petition to go through on an extremely small unit without any employer participation at all. And once the departmental or the only thing that's required is that it be an identifiable employee group. And if it's this little bitty group, then that is effectively what the smaller the better. The Labor Board will find that to be an appropriate unit because the smaller the unit, the more likely they'll have a community of interest. And once the NLRB makes that determination, once they make that determination, without the employer's involvement, it's a done deal because the burden then shifts to the employer. Community of interest is certainly something worth considering, don't you think? The community of interest, and this is where the Board changed the community of interest standard, used to be applied to all the employees that were in contention. Here they apply it only in the first instance, only in the little group that the union petitions for. And then the burden totally shifts to the employer to show that it's not appropriate. I don't know what you're talking about. The question is whether the dock workers are so different in terms of wage and the nature of their work, and are they little people versus the drivers, have more of a prestigious job. The question is whether these two groups are sufficiently disparate that it's difficult for them to operate as a single union because their members are, as I say, they're disparate. Isn't that something worth considering? It's worth considering under the traditional test, Your Honor. But that's not the test the NLRB used in this case. The NLRB went out of its way to say, we're applying the specialty health care test that makes the initial burden very small to the union and imposes a no rational – in order to defeat it, the employer has to show that the selected unit has no rational basis with overwhelming evidence. Now, that's a pretty unfair burden to have. How many unions does FedEx deal with? FedEx Freight does not deal with any unions. I'm talking about FedEx. FedEx deals with the Pilots' Union and the Railway Labor Act. That's all. I'm sorry. The Pilots' Union, FedEx Express has a contract with the Pilots' Union under the Railway Labor Act. I'm talking about FedEx, not its little constituents. Now, the question is how many unions does the FedEx empire deal with? One, the Airline Pilots' Association, one, the Airline Pilots' Association for the pilots. That's the only union FedEx has? Yes, Your Honor. So this is your first attempt to unionize your non-pilots? Yes. FedEx Express is really a different company. It's an entirely different company, differently operated. FedEx Freight has no unions. Let me sum up. And I want to return just briefly to the point I made to Your Honor. Because the burden that the employer must assume is so burdensome. What's so burdensome? Well, I'm talking about the test here. What's the burden? I don't know what you're talking about. What's the big burden? The burden is to show that the petitioned for unit is inappropriate and has no rational basis. The rational basis is that the dock workers are very different workers from the drivers. Different tasks, different status. Why aren't those relevant considerations? They're relevant considerations under the old test, Your Honor. Why aren't they relative considerations under any test? The law is, and I think it's fairly fundamental administrative law principles, if I understand it. And I acknowledge you understand it better than I do. But where an administrative agency uses the wrong standard, it's up to the Court of Appeals to say, you go back and use the right standard. I don't understand. Do you really think the Supreme Court has said that the labor board can't consider in deciding whether there should be one big union or two little unions how much similarity or dissimilarity there is among the different groups of workers? It makes a big difference on how they do it, Your Honor. What do you mean how they do it? On the tests that they apply, especially health care tests. Look, you're not answering my question. Isn't it appropriate for the unions, the labor board, to consider how uniform a worker group is in deciding whether they should be in two unions or one union? Of course it is, Your Honor. However, that's not what they did here. They applied the wrong test. Oh, come on with the wrong test. The question is, is there a reason, to have the dock workers in a separate union from the drivers? That's the question. Forget about the cases. Just look at it as a question of fact. Is it better or worse to have them, from their standpoint, from the company's standpoint, from anyone's standpoint, which is better? Well, if given the opportunity to argue this case before the NLRB, under the traditional test. You won't answer my question. I'm just asking a factual question. I'm not asking about the law. The factual question is, there is sufficient community of interest between the dock workers and the drivers. Okay, explain that. What's that community of interest? Common supervision. Explain the community of interest. Community of interest looks to a number of factors. It's a multi-factor test. Would you stop it with the wind-ups and just answer my question. What is the community of interest? What do they have in common that makes it appropriate to have one union for them? Common supervision. Pardon? Common supervision. They're supervised by the same people. It's in the stipulation. Common wages. In fact. Common wages? Common wages. Are they paid the same? They're paid the same? The road drivers and the dock workers are both paid on an hourly basis. Are they paid the same amount of money? No, Your Honor. Well, why did you say they're paid the same? You're really, you are not answering our questions. You're skirting them with your pre-rehearsed spiel. I see my time has expired, Your Honor. So what are their common features? They're not paid the same. They're both paid, but they're not paid the same. They're commonly supervised. They have the same benefits. What do you mean the same benefits? The same health insurance benefits. Wait a second. Yes, pension, health insurance, pension. Do they have this, are their benefits tied to their wages? No. May I ask a question before the counsel sits down? Okay. Counselor, could it not be that the board has simply determined that the motivation you see, that it would be nice to have the dock workers in this bargaining unit because it would be easier for you to win, that the board has decided that that motivation is antithetical to the purposes and the power, in effect, to prevent you from using a poison pill to upset the representational determination? Wouldn't that be a rational basis for the NLRB's action in adopting this case, this rule? It is the reason why unions petition for the voting unit they do and why the employers take the position on voting units that they do. Everybody knows that. And if that is somehow a secret, I'm sorry to have spilled it. But that's no, in fact, it goes quite the other way. Where a union's extent of organization is controlling, the statute specifically prohibits the board from certifying the union. When it is controlling, yes. Yes, yes. And what I'm saying is the board has jimmied the standard under specialty health care to make the extent of organization controlling. That's your major point, am I right? Yes, Your Honor. Good. Thank you. Thank you, Your Honor. Okay. So we'll hear from Ms. Rajapaksa. Yes. Thank you, Your Honor. May it please the court, my name is Meelakshmi Rajapaksa. I'm counsel for the National Labor Relations Board. I'd like to begin by correcting just a factual point that Mr. Rich made. He said that FedEx Freight is not bargaining with any unions. In fact, the company is under an order to bargain with two different Teamsters locals in two other cases. So the Eighth Circuit and the Third Circuit. Could you speak up? I'm having trouble here. Yes, I'm having trouble too. I apologize. The Teamsters, two different Teamsters locals should be bargaining with the company at this point because the company has made essentially the same arguments in two other cases, one before the Eighth Circuit, excuse me, two before the Eighth Circuit and one before the Third Circuit and has lost both of those cases. So, in fact, FedEx Freight does have unionized employees at this point. To go to the specialty health care challenges that the company has raised, as the court is, I'm sure, well aware, the company's position, actually every portion of its argument has been rejected now in other cases. In five other cases before five other courts. And those courts have, you know. You know, FedEx says that the specialty health care standard myopically focuses on the proposed unit in isolation at the first step of the analysis. And it seems to me that the regional director's determination in this case is somewhat conclusory on this point. How do we know that the directors and the board in their application of specialty health care and in assessing the propriety of the proposed unit are giving some consideration to the community of interest that the unit members might share with the workers who are outside of the proposed unit? Your Honor, under the letter of specialty health care, in the first stage of the analysis, the board is supposed to consider distinctness or separateness. So not only the internal, the so-called internal community of interest that the employees share, but also what sets them apart from other employees and whether they have distinct attributes. And in this case, I think the regional director actually was quite clear about what distinguishes this group of drivers from the dock workers. They are vastly different skilled employees who are paid between $25,000 and $45,000 more than the dock workers. They are all full-time employees, whereas the dock workers are part-time employees. And by virtue of that distinction alone, they get different benefits. Some of the benefits are the same. I think Mr. Rich correctly referred to the fact that all of the FedEx freight employees, including dock workers, get retirement benefits and health benefits. But beyond that. What are the different benefits? The drivers are entitled to two to four weeks of vacation, paid vacation. They also get seven holidays off during the year. The dock workers get no vacation? They get no paid vacation. They have five to seven personal days, I believe that they get, and that's what all of the employees get as a baseline. And when you say five to seven personal days, are you talking about sick days? Are you talking about Christmas Day? What are you talking about? It's not clear, Your Honor, from the record what exactly constitutes a personal day. It's not a holiday. It could be a sick day. It could be a sick day. Dock workers don't accrue paid vacation leave. Don't what? They don't accrue paid vacation leave. And they also are not entitled to the seven paid holidays over the course of the year that the drivers do get. What was it you just said? Don't get the seven paid holidays? They don't get the seven paid holidays. Right, right. So that would include Christmas Day, for instance? Yeah, I believe so, Your Honor. So they have to take that as a personal day, it would seem. It would seem so, Your Honor, but you'd have to ask Mr. Rich about the details of the company's arrangement on that front. There really are, as the Court has already observed in this argument, there are a litany of differences between these two different groups of workers, and there are very practical reasons why the drivers really should be part of a separate unit for purposes of collective bargaining. In terms of the specialty health care challenge, which is really the company has put all its chips, so to speak, in this basket of challenging the standard that was applied, it isn't seriously contending that under specialty health care it can win this case. So turning to the challenges, I will say I understand the company's point that this court is not in any way bound by what other courts have said in responding to specialty health care challenges. However, the other courts have spoken quite persuasively to all of the arguments that the company is making before this court. And what is your understanding of the other courts' rationale? What rationale do they attribute to the Board for adopting the standard? I think the Fifth Circuit in Macy's and the Fourth Circuit in Nestle have both found that the Board's rationale was really to, and the Third Circuit recently said this as well, the Board's rationale is really to standardize the language used in describing the company's evidentiary burden. It takes me back just one step. Why did the Board use the original language which they arguably standardized in the health standards? What was the rationale for placing this kind of burden on the employer? Well, the Board, just to step back a little bit, Your Honor, the Board has the authority obviously to designate an appropriate unit. And as this court has recognized and many courts have recognized, in order to overcome the Board's finding of an appropriate unit, the company or the employer has to do more than simply show an alternative possibly appropriate unit. They have to make this overwhelming showing that the unit is inappropriate. But why do they have to make that overwhelming showing? Because an appropriate unit is all that is required under the statute. So the Board allows the petition for a unit to drive its analysis. It looks first at the petition and asks, is this an appropriate unit? And if it is an appropriate unit, the inquiry really ends, unless the employer challenges the unit and claims that it's clearly inappropriate. So in your view, the Board's rationale for the heightened standard is grounded in statutory language? It's grounded in statutory language and the language that many courts have used, including this court, to describe the company's heightened burden when it's challenging an appropriate unit and claiming that more employees should be added. And all that the Board really did in specialty health care is clarified the language because it recognized that the use of varying verbal formulations, and this is something the Sixth Circuit also said in kindred nursing, the use of varying verbal formulations does not serve the purposes of the Act. It doesn't assist the parties to assess what they need to do in a given case, in a unit determination case. And so the Board identified this language that actually comes from the D.C. Circuit's decision in Blue Man Vegas that really just describes what it takes for a party to meet its burden in challenging an appropriate unit. The party cannot show another possible appropriate unit, which, by the way, is essentially what the company is attempting to do here. It has to show that there's such an overwhelming community of interest between the employees in the unit that has been found appropriate and the excluded employees that the excluded employees actually must be included in the unit. And this is perfectly consistent with earlier law, and that's why the five circuit courts that have addressed specialty health care have resoundingly found that it is not a major overhaul of the law. It is simply a clarification, and it's just going methodically through the steps of the specialty health care analysis. The first step incorporates the traditional community of interest analysis that my colleague has referred to, and that is an analysis that goes back to United Operations, which itself is based on cases going back to 1964. So it's far from new, as the company claims. The second step of the specialty health care analysis builds on these other cases that we've discussed that uniformly talk about the employer's burden as a heightened burden, and different words have been used, but overwhelming does appear in the Board's cases on initial unit determination cases. I understand that the company believes that the Board improperly has imported that standard from a different context called the appreciation cases, but that's simply not true. As the Macy's Court recently recognized, the word overwhelming has been used in the initial unit determination context in Jewish Hospital Association, which is a 1967 case. It has been used in Logean. It has been used in Lane Co. There are several cases that are cited in the Board's brief that show the Board has not consistently used the word overwhelming. It has not even perhaps frequently used the word overwhelming, but overwhelming is one of the words that has been used to describe the employer's burden, and all that specialty health care does is nail down for the parties that overwhelming is the standard to be applied currently. Apart from the five other circuits that have already spoken, are there other circuits that have this same issue pending before them? I believe there's a case pending in the Second Circuit, Your Honor. Constellation Brands, I believe, is another case involving a specialty health care challenge. I'm not aware of any other cases. Thank you. Okay, thank you. Mr. Karastensis? Good morning, Your Honors. May it please the Court. My name is Kosa Karastensis of Bicentea in Bodine, and I represent Teamsters Local 439 out of Stockton, California. The International Brotherhood of Teamsters has represented employees in a particular craft, truck drivers, for over 100 years, and my view has great expertise in doing so and dealing with the interests that are unique to such employees in collective bargaining. That's what the Teamsters seek to do in this case. Going back to the facts of this case, the Teamsters seek to collectively bargain the terms and conditions of the truck drivers at the Stockton terminal who sought them out as a union of their choosing. From the union's point of view, what would be the disadvantage, if there is one, of including the dock workers at the terminal in the unit? Well, first, Your Honor, the employees who came to the union and sought organization, which the Act specifically says is there to protect self-organization, were the truck drivers, not the dock workers. But going then more to a collective bargaining point, as the regional director found in this case, the truck drivers have distinct and unique terms and conditions of employment that would be important in dealing with collective bargaining that might be at odds with the dock workers. For example, one simple example, the truck drivers, as being regulated by the Department of Transportation, under the FLSA, are not entitled to overtime. Are not entitled to overtime, did you say? Are not entitled to overtime? Correct, Your Honor. Also, under California law, because of the size of their trucks, Because of what? Because of the size of their trucks, they would not be entitled to overtime. The dock workers are. So in a collective bargaining context, as the union, we would be seeking to address that issue for the truck drivers through collective bargaining. Additionally, the truck drivers are licensed and have to pay their own expenses under the current terms and conditions that they're working under for their DOT licensing requirements. Dock workers don't have that. resulting from that. Do the dock workers have, is their work physically more strenuous? They are moving the product or the freight at the dock. Conceivably, that is physically more strenuous. It depends, of course, they could be using hand dollies, but there are differences in the physical strain, potentially, of the two employees, two employee groups. The other difference is as drivers, you know, the drivers are outside of the terminal. They are primarily supervised. Contrary to what Mr. Rich said, they're primarily supervised by a different supervisor, a dispatcher, than the dock workers who are supervised by dock worker supervisors. So in other words, in the union's view, it would undermine some way. I'm sorry, you cut out for a second, Your Honor. Oh, I'm sorry. In the union's view, it would undermine the unit in some way to include the dock workers. Well, in these facts, Your Honor, it is the union's view that certainly the truck drivers are an appropriate bargaining unit. We haven't assessed fully if a unit that includes dock workers, that they share some community of interest, whether or not that would be an appropriate bargaining unit. But in the union's view, in this case, the uniqueness of the truck drivers make them an appropriate bargaining unit. They're the drivers who sought out the union, which is what the Act calls for. And they are the employees that sought out the union. And they have unique interests. So does that mean that the dock workers don't have their own union? No, it does not mean that. The dock workers can seek out under the Act to organize and seek their own. I'm sorry, what? The dock workers can seek out and organize for the union. Oh, yes, sure, but have they? Oh, not that I'm aware of, no. And, you know, the differences between the two employees in this case are stark. And the regional director in this case did apply a community of interest test, which, as this Court is aware, the Board is vested with the discretion in making union determinations. And in doing that, the Board has always applied a community of interest test. And it applied a community of interest test in this case. And when it applied the community of interest test in this case, it looked at not only inwardly the commonalities between the drivers, but outwardly the distinction of the drivers from the dock workers. And in doing so, it cited even to Home Depot, which shows why those factors are important, and found it is an appropriate bargaining unit. So kind of bringing back to why I'm here today, Your Honors, I'm not here to argue I fully agree with the NRB and the sister circuit courts that specialty health care is an appropriate test and simply a clarification of the tests that have been always applied in terms of disturbing a bargaining unit. But what I'm here to say is, based on the facts of this case, under any permutation of cases that FedEx may wish to advance, there's absolutely no rational basis to argue that the drivers here are not an appropriate bargaining unit that can collectively bargain under the Act. Going back to the Act, the purpose of the Act is to encourage collective bargaining. The purpose of the community of interest test is to determine factors that are important in collective bargaining. That's what the regional director did in this case, and that's why the truck drivers are an appropriate unit. Okay. Thank you. Thank you. So, Mr. Rich, you can have another minute. Thank you, Your Honor. Let me clarify a point. FedEx Freight does not have any union contracts. In effect, the other two court of appeals cases in which we've been involved have been decided and negotiations have been undertaken in those two locations. Now, Ms. Rajapaksi said that the benefits are not identical for the personal interest. Some are, some are not. And, frankly, my understanding is they do have paid holidays and they have full benefits. And they have what? Full benefits. The same benefits. Part-timers have the same benefits as full-time employees. That is my understanding, Your Honor. So she was wrong? She was wrong. Are you saying she was wrong? I'm saying she was wrong. They have all this same paid vacation and the seven days and all that stuff? Yes, sir. Yes, sir. Okay. Let me finish with my concession. Pardon? Let me finish with this concession, Your Honor. If we're going to argue the facts, the NLRB could have found against us under the old test, but they chose not to do it. And the reason they want to inculcate this specialty health care standard is to diminish the discretion of future boards that might rule for employers. Thank you, Your Honor. Okay. Well, thank you to all three counsel.